**Zenobla MURPHY, Plaintiff,**

**v.**

**Hon. Otis R. BOWEN, etc., Defendant.**

**Civ. No. 85–3303 (AET).**

United States District Court,
D. New Jersey.

Aug. 12, 1988.

Legal Aid Society of Mercer County, Trenton, N.J., for plaintiff.

Faith Steinberg, Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

ANNE E. THOMPSON, District Judge.

This matter comes before the court on a motion by the plaintiff Zenobla Murphy for attorney's fees pursuant to the Equal Access to Justice Act ["EAJA"], 28 U.S.C. § 2412(d)(1)(A). Plaintiff maintains that she is the "prevailing party" and that the government's position was not "substantially justified."

This case has a complicated and somewhat convoluted history. Plaintiff filed a claim for Disabled Widows Insurance Benefits ["DWIB"] and for Supplemental Security Income ["SSI"] on September 19, 1983. She alleged disability due to degenerative joint disease, hypertension, scoliosis, myocardial infarction and obesity. When she exhausted her administrative remedies, plaintiff filed this action in federal district court. The Secretary of Health and Human Services ["Secretary"] filed an answer with an administrative record on November 8, 1985. At some point thereafter, the parties began negotiations regarding a possible remand pursuant to § 5 of Social Security Disability Reform Act of 1984. As a result of these discussions the parties agreed to extend the time to file the Rule 48 documents. These documents were never filed. A consent order remanding the matter pursuant to § 5(c)(1) was entered on February 7, 1986.

The exact reasoning behind the remand is unclear. It was not ordered by the court after a review of the administrative record. The remand was also not mandated by § 5(c)(1) since the initial determination was not based on any allegations of mental impairment. As defendant notes, the plaintiff alleged disability due to scoliosis, degenerative arthritis, hypertension, myocardial infarction and obesity and the Secretary determined the plaintiff was able to perform light or sedentary work and was

not disabled. Since there was no allegation of mental impairment and the Administrative Law Judge ["ALJ"] did not make a determination regarding mental impairment, redetermination by the Secretary was not required under § 5. During the discussions concerning a consensual remand, however, the plaintiff's counsel agreed that despite the fact that no mental impairment had been alleged, there was some evidence in the record of such an impairment. The parties, therefore, agreed to remand pursuant to § 5(c)(1).

Following a second administrative hearing the Secretary concluded that pursuant to plaintiff's claim for DWIB her "impairments neither singly nor in combination were of the requisite level of severity to meet or equal the Listing of Impairments in Appendix 1, Subpart P of S.S.Admin. Regs. No. 4 on or prior to the ending date of specified period on September 30, 1986". The Secretary did, however, find that "[f]or the period commencing on September 4, 1985, the claimant's capacity for light work was reduced by the limitations imposed upon her by her mental impairment with the 'framework' of Rule 202.02 as a basis for decisionmaking in providing for a finding of 'disabled.'" The part of the decision from which plaintiff benefited on remand was, therefore, based at least in part on the Secretary's findings as to mental impairment. A consent order to dismiss as moot was entered on January 4, 1988 as plaintiff chose not to appeal the DWIB claim denial. Plaintiff now moves for attorney's fees under EAJA.

In order to obtain attorney's fees under EAJA plaintiff must show that she is the "prevailing party," 28 U.S.C. § 2412(d)(1)(A), that the government's position was not "substantially justified" and that no special circumstances existed. *Brown v. Secretary of HHS*, 747 F.2d 878, 881 (3d Cir.1984). Plaintiff maintains that she is a prevailing party because the case was remanded and upon remand she prevailed and received benefits. In order to be a prevailing party in a case that was remanded to the Secretary, the court must have ordered the remand and retained jur-

isdiction over the action. *McCarroll v. Bowen*, 661 F.Supp. 1163, 1164 (D.N.J. 1987). The plaintiff, therefore, bears the burden of showing that this remand was ordered by the court. This court has previously held that when the remand is required by law and not made pursuant to a court order, then the plaintiff is not the prevailing party. *McCarroll* at 1164. The plaintiff maintains, however, that this remand was not mandated by § 5 because no ruling on mental impairment had been made in the initial hearing. Plaintiff argues that had she not filed the suit in federal court, the defendant never would have consented to a remand and the plaintiff never would have had the second hearing in which she was awarded benefits.

It does appear from both parties' presentations that on its face the initial administrative ruling would not have been automatically remanded pursuant to § 5. The decision to remand only occurred after plaintiff filed an action in federal court and the Secretary reviewed the administrative ruling and determined that although plaintiff had not alleged a mental impairment, there was evidence in the record of such impairment. Plaintiff argues that the filing in federal court was the "catalyst" for receiving benefits from the Secretary.

In this instance, the court did not order this remand for substantive reasons after reviewing the record and that plaintiff did consent to a remand on the mental impairment issue pursuant to § 5. If the court reviews the evidence and the administrative proceedings and determines that the Secretary's decision was not supported by substantial evidence and should be remanded, then a plaintiff can recover under the EAJA. *Haney v. Heckler*, 613 F.Supp. 12, 17 (D.C.Ill.1984); *Bohn v. Heckler*, 613 F.Supp. ·232, 237 (D.C.Ill.1985). In this case the court did not ever examine the evidence or the administrative proceedings; in fact the court played no actual role in the decision to remand.

■ The fact remains, however, that were it not for the filing of this lawsuit, the plaintiff would not have received the benefits which she received as a result of the second administrative proceeding. The purpose of EAJA "was to insure that individuals would not be deterred from challenging unreasonable government conduct by the high cost of litigating against the government." *Vitale v. Secretary of HHS*, 673 F.Supp. 1171, 1175 (N.D.N.Y. 1987). In this action plaintiff would not have received her benefits had she not been willing to challenge the government's conduct. The filing of this lawsuit was the catalyst which forced the government to re-examine the case and give her the benefits to which she was entitled. This case is different from those cited by the defendant which were remanded pursuant to the requirements of § 5 or § 2 of the Reform Act and in which the court concluded that the remand was required by law and the plaintiffs were not prevailing parties. In this instance, however, the Secretary has not shown that the remand would have been required by law since the Secretary has not shown that there was any discussion of mental impairment in the ALJ's initial ruling in plaintiff's case. There has been no showing that without the filing of this lawsuit, the Secretary would have ever thought to re-examine this claim and determine that it should be remanded pursuant to § 5 or for any other reason. We find that plaintiff's lawsuit was the catalyst for the defendant's agreement to remand and subsequent decision to authorize benefits. The Secretary did try to shape the remand to appear as if it was required under § 5 by maintaining that there was evidence of mental impairment, although the plaintiff did not allege mental impairment and the ALJ did not rule on mental impairment. The court finds that plaintiff's claim would not have been automatically reviewed and it was only because the action was filed that the defendant agreed to re-examine the case and benefits were subsequently allowed. *See Hyatt v. Heckler*, 807 F.2d 376, 382 (4th Cir.1986); *Vitale* at 1175–1178; *Stone v. Heckler*, 658 F.Supp. 670, 674–5 (S.D.Ill.1987). *See also Rose v. Heintz*, 806 F.2d 389 (2d Cir.1986) (plaintiff's ·lawsuit as catalyst makes them a prevailing party within the meaning of 42 U.S.C. § 1988.

■ Since the court has found that plaintiff is a prevailing party, the court must now examine whether the government's position was substantially justified. In *Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 2549–50, 101 L.Ed.2d 490 (1988) the United States Supreme Court, resolving disputes among the Circuits, held that substantially justified means "justified to a degree that could satisfy a reasonable person" as opposed to "justified to a high degree." The court cannot find that the government's position was substantially justified. The ALJ's decision denying plaintiff benefits concludes that she is capable of both light and sedentary work, and therefore, is not disabled pursuant to Rule 202.10, Appendix 2, Subpart P of S.S. Ad.Reg. No. 4. The court can find no basis for the ALJ's determination that the plaintiff can do light work.

Light work is defined as work which involves lifting no more than 20 pounds with frequent lifting of objects up to 10 pounds. Furthermore, "a job is in this category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. Ch. III § 404.1567(b). Almost all the medical evidence in the record and the evidence. cited in the ALJ's decision indicates that plaintiff is not capable of the activities which are part of the light work definition. Dr. Drezner, who performed consultative examinations of the plaintiff in both 1980 and 1984, concluded in 1980 that plaintiff could only walk or stand for one to two hours per day and could only occasionally push and pull. These results do not place plaintiff in the light work category which requires "a good deal" of walking or standing. Furthermore, in 1984 Dr. Drezner concluded that plaintiff could do only sedentary work. Dr. Miller also performed a consultative examination on June 8, 1981 and concluded that the plaintiff was totally and permanently disabled. Dr. Fleming performed a consultative examination in June 1981 and determined that the plaintiff "is restricted from activities requiring prolonged standing, walking, bending, stooping, lifting." He concluded she could do

sedentary work. In November 1983 Dr. Marshall also determined that the plaintiff could do sedentary work. Dr. Altman performed a consultative examination in December 1983 and concluded that plaintiff "could not do any type of work requiring bending, lifting, carrying, pushing or pulling or standing on his [sic] feet for long periods of time." Dr. Ambrose concluded that plaintiff was unable to "perform lifting activities or prolonged ambulation. Dr. Yamane noted on December 27, 1984 that plaintiff could not do a job which required "lifting, pulling, pushing, bending or kneeling." Each of these findings is at odds with a conclusion that plaintiff is capable of doing light work. In fact nowhere in his report does the ALJ cite to any medical evidence that plaintiff is capable of anything other than sedentary work. The ALJ provides no basis for his decision to ignore the virtually unanimous medical evidence that plaintiff cannot lift, push or pull, stand or walk for any significant period of time and can only do sedentary work. Once the ALJ determines based on the medical evidence what level of work plaintiff is able to do, he must examine the grid to determine in combination with her skills, age and education whether she is disabled. Based on the finding that plaintiff can only do sedentary work, has no vocational background, did not graduate from high school and is closely approaching advanced age, the ALJ should have applied Rule 201.10 rather than 202.10 and determined that plaintiff was disabled.

■ The ALJ is not free to contradict the specific medical findings reached by physicians without basing his ruling on medical evidence. *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir.1986). In *Gilliland*, the court holds that a decision by an ALJ made "without analytical comment or record reference to contradictory evidence is not supported by substantial evidence." The court can find no basis in the record for the ALJ's conclusion that plaintiff was capable of doing light work and, therefore, according to the grid was not disabled. The court cannot, therefore, find that the Secretary's position was substantially justi-

fied. The Secretary has failed to establish a reasonable basis for the Social Security Administration's decision. The ALJ cited no medical evidence to support his conclusion. The ALJ's ruling, affirmed by the Secretary, was not justified to a degree that would satisfy a reasonable person.

Since this court has found that plaintiff was a prevailing party and that the Secretary's position was not substantially justified, we find that plaintiff is entitled to attorney's fees under EAJA. The court notes that the Secretary has not raised any objections to the hourly rate requested by plaintiff's counsel nor to the total amount claimed. The court has reviewed the affidavit of counsel and deems the amount requested proper. The court grants plaintiff attorney's fees in the amount of $2,327.50.